UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Information Leasing Corporation, successor in
Interest to Comark Capital Financial Services,

      Plaintiff,

v.                                                                     Civ. No. 03-5111 (JNE/JGL)
                                                                    ORDER

McGladrey & Pullen, L.L.P., and RSM
McGladrey, Inc.,

      Defendants.

---

Vincent Borst, Esq., Askounis & Borst, P.C., and Benjamin Skjold, Esq., Hellmuth & Johnson, PLLC, appeared for Plaintiff Information Leasing Corporation.

David Marshall, Esq., and Jeffrey Jones, Esq., Fredrikson & Byron, P.A., appeared for Defendants McGladrey & Pullen, L.L.P., and RSM McGladrey, Inc.

---

      This is a breach of contract action brought by Information Leasing Corporation (ILC), successor in interest to lessor Comark Capital Financial Services (Comark), against lessee McGladrey & Pullen, L.L.P. (McGladrey) and McGladrey's successor in interest, RSM McGladrey, Inc. (RSM) (collectively, Defendants). The case is before the Court on ILC's motion for summary judgment and Defendants' motion for partial summary judgment. For the reasons stated below, the Court denies ILC's motion and grants in part Defendants' motion.

                                      **I.**      **BACKGROUND**

      On July 31, 1998, McGladrey, a certified public accounting firm, entered into a Master Lease Agreement (Lease Agreement) with Comark, a company that facilitates equipment leases. Under the Lease Agreement, McGladrey agreed to lease computer equipment from Comark in accordance with its terms and later-executed lease schedules. On the same day, McGladrey entered into Lease Schedule 001 (Schedule 001) with Comark, and in December 1998, entered

1

into Lease Schedule 002 (Schedule 002) with Comark. Both Schedules provided for a lease term of thirty-six months, and McGladrey paid the entire amount due for lease payments under the Schedules at the beginning of each Schedule's term.

At some point during the terms of the Schedules, Comark assigned its interest in the leases to ILC. In addition, in 1999, McGladrey assigned its interest in the leases to RSM, a business consulting firm with offices at McGladrey locations. McGladrey sent notice of this assignment to Comark in July 1999, but did not notify ILC of the assignment.

In December 2000, RSM notified Comark of RSM's intent to return the equipment under Schedule 001 and requested instructions regarding return procedures. Comark asked ILC to respond to RSM's inquiries. Thereafter, RSM, Comark, and ILC discussed return procedures.

On July 31, 2001, Schedule 001 expired. On August 7 or 8, 2001, ILC instructed Defendants to return the Schedule 001 equipment to Zone Trader, a company hired by ILC to receive and sell the returned equipment. On August 15, 2001, RSM provided formal, written notice of its intent to return some and to purchase some of the equipment under Schedule 001 and of its intent to return the equipment under Schedule 002. On September 28, 2001, RSM sent to ILC a list of the specific equipment from Schedule 001 that it had elected to purchase. Sometime thereafter, RSM sent to ILC a check for that equipment according to a price list determined by ILC. Defendants[1] claim that they returned all of the Schedule 001 equipment they decided not to purchase by August 31, 2001. ILC, on the other hand, alleges that Defendants were still returning Schedule 001 equipment as late as December 20, 2001.

---

[1] Because McGladrey and RSM have asserted common defenses and do not argue at this stage that the assignment affects their respective liabilities, the Court refers to McGladrey and RSM collectively for purposes of convenience.

2

On December 31, 2001, Schedule 002 expired.[2] The parties agree that Defendants returned the equipment under that Schedule by January 31, 2002.

## II.  DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     ILC's Motion for Summary Judgment**

ILC alleges that Defendants breached the Lease Agreement by failing to (a) give timely and effective notice of intent to return the Schedule 001 and 002 equipment, (b) timely return the Schedule 001 and 002 equipment, (c) give timely notice of intent to purchase equipment under Schedule 001, and (d) pay taxes on the Schedule 001 and 002 equipment. In addition, ILC

---

[2]    There appears to be some confusion about when Schedule 002 expired. McGladrey and Comark signed it on December 16, 1998, and February 4, 1999, respectively. McGladrey received the equipment in December 1998, before Comark signed the Schedule. At times, Defendants appear to concede that the expiration date of Schedule 002 was December 31, 2001, rather than January 31, 2002. Therefore, for purposes of this motion only, the Court will treat the expiration date as December 31, 2001.

argues that McGladrey improperly assigned the Lease Agreement to RSM. ILC moves for summary judgment on all of its claims. The Court will address each in turn.

*1.     Notice of intent to return*

ILC argues that the Lease Agreement required Defendants to send advance written notice by certified mail to ILC of Defendants' intent to return the leased equipment and that Defendants failed to provide the required notice. Defendants contend that they had no duty under the Lease Agreement to provide ILC with any notice of their intent to return the equipment.

At the heart of the parties' disagreement is paragraph 14 of the Lease Agreement. That paragraph provides in relevant part:

> *You shall provide us with written notice, by certified mail, sent not less than 90 days* nor more than 180 days *prior to the expiration of the initial term of any Schedule to this Lease*, *of your intention either to exercise any option to purchase or renew the Equipment* (if we grant you such an option). For this notice to be effective, you must not be in default of any of your obligations to us. If you elect to return the Equipment to us at the expiration of the original or any renewal term of the Lease, you shall disconnect, properly package for shipping, and return the Equipment to us, insured and freight prepaid by you, in good repair, condition and working order to a location designated by us. If you fail to notify us, or having notified us, you fail to return the Equipment as provided herein, this Lease shall renew for an additional 3 month term and month to month thereafter and you agree to continue to make rental payments at the same monthly rental payment as set forth in the Lease or Schedule subject to the right of either party to terminate the Lease upon 90 days written notice, in which case you will immediately deliver the Equipment to us as stated in this paragraph.

(Emphasis added.)

When the parties dispute the meaning of a contract provision, the threshold issue is whether the contract is ambiguous. *Fleet Bus. Credit, LLC v. Enterasys Networks, Inc.*, 816 N.E.2d 619, 629 (Ill. App. Ct. 2004).[3] "Contractual language is ambiguous when it is susceptible to more than one meaning or is obscure in meaning through indefiniteness of expression." *Id.*

---

[3]     The parties agree that their dispute is governed by Illinois law.

(quotations omitted). The determination of whether a contract is ambiguous is an issue of law. *Id.* at 630.

In this case, the language, "[i]f you fail to notify us, or having notified us, you fail to return the Equipment as provided herein, this Lease shall renew for an additional 3 month term," arguably suggests that Defendants had an obligation to give some kind of notice of intent to return the equipment. On the other hand, the only provision of the Lease Agreement that clearly and affirmatively imposes on Defendants a written notice obligation does not impose an obligation to give notice of intent to return. Instead, that provision only imposes an obligation to give written notice of intent to purchase or renew the equipment. Thus, the Court finds that the Lease Agreement, read as a whole, is ambiguous with respect to the issue of whether Defendants were required to give notice of their intent to return the leased equipment.

"The principal objective in construing a contract is to determine and give effect to the intention of the parties at the time they entered into the contract." *Id.* at 629. Where the contract is ambiguous, a court may consider extrinsic evidence of the parties' intent when construing the contract. *See Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). To that end, Defendants have offered the deposition testimony of Ken Thygesen, McGladrey's former Chief Information Officer, and Joseph Rinehart, Comark's Vice President. According to Thygesen and Rinehart, during contract negotiations, the parties deleted language in a prior version of the Lease Agreement imposing upon McGladrey an obligation to give notice of intent to return the equipment. Viewed in the light most favorable to Defendants, the record demonstrates that the original parties to the Lease Agreement intended to eliminate the requirement that Defendants provide written notice of their intent to return the equipment.

As to ILC's argument that the doctrine of *contra proferentem*—according to which ambiguities are construed against the party who drafted the contract—should be applied to resolve the ambiguity in paragraph 14, both parties were involved in the drafting of the Lease Agreement. Thus, the Court concludes that the doctrine is not properly invoked in this case. *See Tranzact Techs., Ltd. v. Evergreen Partners, Ltd.*, 366 F.3d 542, 546 n.2 (7th Cir. 2004) (applying Illinois law).

In sum, even if the Court were to assume that Defendants failed to give written notice of their intent to return the equipment, there is a genuine issue of material fact as to whether they were required to give such notice. The Court therefore denies ILC's motion for summary judgment on its claim that Defendants breached the Lease Agreement by failing to give written notice of their intent to return the equipment.

2.  *Timeliness of return of equipment*

The Court next turns to ILC's claim that Defendants did not timely return the Schedule 001 or Schedule 002 equipment. The Court will consider, in turn, the parties' dispute about when the equipment under Schedules 001 and 002 was due and whether that equipment was returned by the due date.

a.  *Due date*

There is no question that Defendants did not return all of the equipment by the expiration dates of the Schedules—that is, by July 31, 2001, for the Schedule 001 equipment and by December 31, 2001, for the Schedule 002 equipment. Thus, the Court's threshold inquiry is whether Defendants were obligated to return the leased equipment by those dates. The Court concludes that they were not.

Two provisions in the Lease Agreement address this issue, namely, paragraphs 8 and 14. Paragraph 8 provides in relevant part: "*At the end of the Lease term*, you will return the Equipment to us at your expense pursuant to paragraph 14." (Emphasis added.) Paragraph 14 states in relevant part: "If you elect to return the Equipment to us *at the expiration* of the original or any renewal term of the Lease, you shall disconnect, properly package for shipping, and return the Equipment . . . to a location designated by us." (Emphasis added.)

Neither paragraph 8 nor paragraph 14 of the Lease Agreement specifies when the equipment must arrive at ILC's chosen designation. The Court, therefore, turns to extrinsic evidence to determine the parties' intent on this question. 810 Ill. Comp. Stat. 5/2A-202, which governs agreements for the lease of goods, provides:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
>
> (a)   by course of dealing or usage of trade or by course of performance; and
>
> (b)   by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

*Id.*

In this case, Defendants have presented usage of trade evidence to explain the parties' intent. "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." *Id.* at 5/1-205(2). Specifically, Defendants have presented evidence in the form of deposition testimony of Comark's Vice President, Joseph Rinehart. According to Rinehart, where a lease agreement does not provide a specific due date

7

for return of equipment, the industry standard is that the equipment is due to be returned thirty days after the expiration of the lease. ILC does not present any conflicting evidence. Accordingly, there is no genuine issue of material fact that the equipment was not due on the last day of the lease term, but was instead due thirty days from the end of the lease term.[4]

  b. *Date returned*

ILC claims that there is no genuine issue of material fact that Defendants did not return the Schedule 001 equipment in accordance with industry practice—that is, by August 31, 2001. According to ILC, Defendants were returning equipment as late as December 2001. In response to ILC's motion, Defendants have come forward with RSM shipping records, which Defendants argue demonstrate that they returned all of the Schedule 001 equipment that they did not elect to purchase, by August 31, 2001.

ILC has not presented the Court with any reason to disregard Defendants' shipping records. Thus, there is a genuine issue of material fact regarding whether the Schedule 001 equipment that Defendants did not purchase was timely returned. Accordingly, the Court denies ILC's motion for summary judgment with respect to its claim that Defendants failed to timely return the Schedule 001 equipment.

As to the Schedule 002 equipment, it is undisputed that the equipment was returned by January 31, 2002. Given the Court's conclusion that Defendants had thirty days after expiration of the original lease term to return the equipment, the Court also denies ILC's motion with respect to the Schedule 002 equipment.

---

[4] The Court notes that this conclusion is consistent with ILC's behavior in this case. As Defendants point out, they could not possibly have returned the equipment by July 31, 2001 in light of the fact that ILC failed to give Defendants return instructions until August 7 or 8, 2001.

*3.    Notice of intent to purchase equipment*

The Court next addresses the parties' dispute regarding the consequence of Defendants' failure to give timely notice of their intent to purchase some of the Schedule 001 equipment. Under the terms of the Lease Agreement, Defendants were required to provide written notice, by certified mail, of their intent to purchase any of the Schedule 001 equipment. They were required to provide their notice not less than ninety days prior to July 31, 2001, the date Schedule 001 expired. ILC claims that the Lease Agreement automatically renewed for three months—for August, September, and October—because Defendants did not provide a specific listing of the Schedule 001 equipment they intended to purchase until September 28, 2001, almost two months after the expiration of Schedule 001 and five months after notice was due. ILC therefore argues that it is entitled to lease payments for all of the Schedule 001 equipment for those three months, notwithstanding the fact that sometime after September 28, 2001, it accepted payment from RSM for the purchase of some of the Schedule 001 equipment.

Defendants concede that they did not give timely notice of their intent to purchase some of the equipment. They argue, however, that the automatic renewal provision of the lease, upon which ILC's claim for damages is based, is not properly invoked to remedy Defendants' failure to give timely notice of intent to purchase the equipment.

The language relevant to the parties' dispute is again found in paragraph 14 of the Lease Agreement: "If you fail to notify us, or having notified us, you fail to return the Equipment as provided herein, this Lease shall renew for an additional 3 month term and month to month thereafter and you agree to continue to make rental payments at the same monthly rental payment as set forth in the Lease or Schedule . . . ." On one hand, as ILC argues, this language can reasonably be read to mean that the three-month automatic renewal clause applies upon

failure to provide any of the required notices—including notice of intent to purchase. Indeed, this is a natural reading of the language: "If you fail to notify us . . . the Lease shall renew for an additional 3 month term . . . ." On the other hand, as Defendants argue, this language can also reasonably be read to mean that the automatic renewal clause applies only upon failure to properly return the equipment. This construction is consistent with the context and phrasing of the agreement: the automatic renewal clause directly follows and precedes a discussion about return procedures and the consequences of failure to return—rather than purchase—the equipment as provided in the Lease Agreement. Under the first construction, a lessee could be required to make lease payments on equipment that it had already purchased; under the second construction, a lessee would not be placed in such a position.

Because there are multiple plausible interpretations of the disputed language, the Court concludes that the Lease Agreement is ambiguous on the question of whether the three-month automatic renewal provision is applicable where the lessee fails to give timely notice of intent to purchase. Therefore, the Court denies ILC's motion for summary judgment on this issue.

*4.    Taxes*

ILC next argues that it is entitled to summary judgment on its claim that Defendants breached the Lease Agreement by failing to pay taxes that were due on the Schedule 001 and 002 equipment.[5] ILC has offered the affidavit of Lisa Moore, ILC's Vice President and Senior Corporate Counsel, in support of its position that Defendants are in tax arrears in the amount of $7,371.80.[6]

---

[5]    Under paragraph 9 of the Lease Agreement, McGladrey agreed to "pay when due all taxes, fines and penalties relating to" the Lease Agreement.

[6]    Moore's Affidavit states, in relevant part:

Moore clearly testified at her deposition that she did not have personal knowledge of Defendants' tax liability and that she did not herself perform the tax liability calculations. Accordingly, insofar as Moore purports to claim in paragraph 1 of her later-executed affidavit to have personal knowledge of Defendants' tax liability, the Court will not consider her affidavit. *See Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988). Moreover, even if the Court assumes that Moore is qualified in her capacity as the custodian of records to lay the foundation for the admissibility of ILC's tax records as to Defendants, ILC has not supported its motion with any business records on this issue.

In sum, Moore's affidavit is insufficient to establish that Defendants were in tax arrears. Because ILC does not offer any other evidence supporting its motion, the Court denies ILC's motion for summary judgment on this claim.

*5. Assignment*

Finally, ILC argues that it is entitled to summary judgment on its claim that McGladrey breached the Lease Agreement by assigning its interests to RSM without first obtaining the consent of ILC, in violation of paragraph 6 of the Lease Agreement.[7] There is no dispute that

---

> 1. I have personal knowledge of the matter [sic] set forth herein. I am over 18 years of age. If called to testify in this action, I would testify that the following facts are true and correct.
>
> * * *
>
> 16. Defendants also failed to pay property taxes due for the equipment leased under Lease Schedule No. 01 and Lease Schedule No. 02.
>
> 17. At the end of the initial term for Lease Schedule No. 01, $5,136.22 in personal property taxes remained unpaid, and for Lease Schedule No. 02, $2,235.58 in personal property taxes remained unpaid.

[7] Paragraph 6 of the Lease Agreement provides in relevant part: "You may not sell, transfer, assign or sublease the Equipment without our prior written approval."

11

McGladrey's assignment of the Lease Agreement and Schedules 001 and 002 to RSM without prior written permission is a breach of the Lease Agreement. ILC maintains that the breach amounted to a default and, as a result, Defendants' notice of intent to return and notice of intent to purchase were ineffective under paragraph 14 of the Lease Agreement. Furthermore, ILC asserts that because Defendants' notices were ineffective, the three-month automatic renewal provision became applicable and Defendants became liable for three months of lease payments for both the Schedule 001 and 002 equipment.

Under paragraphs 12 and 14 of the Lease Agreement, the improper assignment was an event of default that rendered Defendants' notice of intent to purchase ineffective.[8] However, the Court has already held that the contract is ambiguous with respect to whether the automatic renewal provision is properly invoked as a remedy for Defendants' failure to give timely notice of intent to purchase the equipment. Thus, ILC is entitled to summary judgment only if Defendants were required to give notice of their intent to return the equipment and attempted to do so, but the improper assignment was an event of default that rendered that notice ineffective, thereby triggering the three-month automatic renewal provision.

Paragraph 14 of the Lease Agreement provides in relevant part:

You shall provide us with written notice, by certified mail, sent not less than 90 days nor more than 180 days prior to the expiration of the initial term of any Schedule to this Lease, of your intention either to exercise any *option to purchase* or *renew* the Equipment (if we grant you such an option). For this notice to be effective, you must not be in default of any of your obligations to us.

---

[8] Paragraph 12 provides in relevant part:

If you do not pay rent when due, or if you break any of your promises under this Lease or under any other agreement with us, or you become insolvent, assign your assets for the benefit of your creditors, or enter (voluntarily or involuntarily) into a bankruptcy proceeding, you will be in default.

12

(Emphasis added.) "This notice" in paragraph 14 refers to notice of intent to purchase or renew. There is no mention of notice of intent to return before the use of "this notice." Thus, the plain language of paragraph 14 of the Lease Agreement unambiguously provides that default only renders notice of intent to purchase or to renew ineffective. Accordingly, ILC is not entitled to summary judgment on its claim that it is entitled to three months of lease payments as a result of Defendants' improper assignment.

**B.     Defendants' Motion for Partial Summary Judgment**

The Court next turns to Defendants' motion for partial summary judgment. Defendants move for summary judgment on all of ILC's claims except its claim that Defendants are liable for taxes due.

*1.     Notice of intent to return*

Defendants first argue that they are entitled to summary judgment on ILC's claim that they failed to give adequate notice of their intent to return the Schedule 001 and Schedule 002 equipment because the Lease Agreement did not impose upon them an obligation to give notice of intent to return. For the reasons discussed above, the Court finds that the Lease Agreement is ambiguous on this question. Because the Lease Agreement could reasonably be interpreted to impose a requirement that Defendants give advance written notice of their intent to return the equipment, the Court denies Defendants' motion on this issue. *Cf. City of Chicago v. Dickey*, 497 N.E.2d 390, 394 (Ill. Ct. App. 1986).

Defendants next argue that even if they had a duty to provide advance written notice of their intent to return the equipment, they are entitled to summary judgment because they provided the required notice. Defendants concede that they did not provide written notice of their intent to return the Schedule 001 equipment directly to ILC until August 15, 2001. There is

13

no dispute that this notice, sent almost two weeks after Schedule 001 expired, was untimely. Defendants maintain, however, that Comark and ILC knew as early as December 2000 that Defendants planned to return the Schedule 001 equipment.

Although Defendants have offered evidence that suggests that Comark knew of Defendants' intent to return the equipment and that ILC was aware that they had requested information on return procedures as early as December 2000, a request for information about return procedures is not an unequivocal statement of intent to return. Moreover, Defendants have not offered evidence that they timely informed ILC *in writing* that they intended to return the equipment. Accordingly, Defendants' motion as to the Schedule 001 equipment is denied.

With respect to the Schedule 002 equipment, however, the Court grants Defendants' motion for summary judgment notwithstanding the ambiguity in the Lease Agreement. The only deficiency ILC has identified with Defendants' notice of intent to return the Schedule 002 equipment is that the notice was not sent by certified mail. There is no dispute that ILC received Defendants' August 15, 2001, written notice of intent to return the Schedule 002 equipment. That notice served the same purpose as notice by certified mail. ILC's argument is, therefore, unavailing. *See* Mark S. Dennison, *Sufficiency of Manner and Timeliness of Lessee's Notice of Exercise of Option to Renew or Extend Lease*, 63 Am. Jur. 3d *Proof of Facts* § 423 (2004) ("[M]ost courts have ruled that the use of an alternative delivery method does not render an otherwise timely notice defective if the substituted method served the same purpose or was the functional equivalent of an authorized method."). Accordingly, Defendants' motion for summary judgment is granted as to Schedule 002 on this issue, but denied as to Schedule 001.

*2.     Timeliness of return of equipment*

Defendants next move for summary judgment on ILC's claim that Defendants failed to timely return the Schedule 001 and 002 equipment. For the reasons discussed above in connection with ILC's motion for summary judgment, the Court concludes that the Schedule 001 equipment was due August 31, 2001, and the Schedule 002 equipment was due January 31, 2002. The parties, however, dispute whether that Schedule 001 equipment which Defendants did not elect to purchase was returned by August 31, 2001. On one hand, ILC has offered Zone Trader documents, which purport to demonstrate that Defendants were still returning equipment as late as December 2001.[9] On the other hand, Defendants argue that ILC has failed to establish a foundation for the admissibility of the Zone Trader documents and that RSM's shipping records demonstrate that the Schedule 001 equipment was returned by August 31, 2001.

Drawing all reasonable inferences in ILC's favor, the Court will consider the Zone Trader documents admissible for purposes of this motion. In light of the Zone Trader documents, the parties' records provide conflicting accounts with respect to whether the Schedule 001

---

[9]     ILC initially opposed Defendants' motion for summary judgment on this issue with the affidavit of Lisa Moore, who avers that she is the custodian of all of ILC's records and that, according to ILC's records, Defendants failed to timely return the equipment under both Schedules. ILC did not rely on Moore's affidavit when later moving for summary judgment on this issue. The extent to which ILC continues to rely on Moore's affidavit is, therefore, unclear. Nevertheless, the Court finds that this affidavit is insufficient to raise a genuine issue of material fact on this issue. Moore testified at her deposition that she has no personal knowledge about when Defendants returned the equipment. Accordingly, to the extent that she states in her affidavit that she has personal knowledge of when the equipment was returned, her affidavit is a sham affidavit and the Court will not consider it. *See Wilson*, 838 F.2d at 289. Moore is therefore only able to testify in her capacity as a custodian of records. Although it is not clear from Moore's affidavit which records she relies on to support her opinion because no relevant documents are attached to her affidavit, she appears to be relying on the Zone Trader documents. Moore, however, does not purport to qualify as a custodian of Zone Trader's documents, nor does she purport to testify that the dates of alleged return were recorded at or near the time of their return.

equipment was returned by August 31, 2001. The Court therefore denies Defendants' motion with respect to the Schedule 001 equipment.

With respect to the Schedule 002 equipment, there is no genuine issue of material fact that it was timely returned. The parties agree that Defendants returned all of the Schedule 002 equipment by January 31, 2002, the date it was due in light of industry practice. Accordingly, Defendants are entitled to summary judgment on this claim with respect to the Schedule 002 equipment.

*3.    Notice of intent to purchase equipment*

Defendants also move for summary judgment on ILC's claim that Defendants' failure to give timely notice of intent to purchase some of the Schedule 001 equipment triggers the three-month automatic renewal clause. For the reasons discussed above in connection with ILC's motion for summary judgment, the Court finds that the Lease Agreement is ambiguous on this issue. Accordingly, the Court denies Defendants' motion for summary judgment on this claim.

*4.    Assignment*

Finally, Defendants argue that they are entitled to summary judgment on ILC's claim that McGladrey improperly assigned the Lease Agreement and Schedules by failing to obtain advance permission from ILC to make the assignment to RSM. Defendants do not deny that McGladrey did not obtain advance permission to assign the Lease Agreement and Schedules, but they argue that ILC has not suffered any damages and the Lease Agreement does not contain a liquidated damages provision for this type of default.

Although ILC has not offered any evidence that it suffered damages as a result of the improper assignment, there is a genuine issue of material fact as to whether the automatic three-month renewal clause applies as a result of the improper assignment. As discussed above in

connection with ILC's motion for summary judgment, the improper assignment was an event of default that rendered Defendants' notice of intent to purchase ineffective. However, because the Lease Agreement is ambiguous as to whether the automatic three-month renewal clause is effective upon failure to give adequate and timely notice of intent to purchase, the Court denies Defendants' motion for summary judgment on this issue.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion for partial summary judgment [Docket No. 41] is GRANTED IN PART and DENIED IN PART.

2. ILC's motion for summary judgment [Docket No. 58] is DENIED.

Dated: July 21, 2005

                                       s/ Joan N. Ericksen_____
                                       JOAN N. ERICKSEN
                                       United States District Judge